## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| LORENZO COLLINS, | ) | CASE NO. 1:12-cv-01925 |
| | ) | |
| Petitioner, | ) | JUDGE DAN AARON POLSTER |
| | ) | |
| v. | ) | MAGISTRATE JUDGE GREG WHITE |
| | ) | |
| WARDEN ROSS CORRECTIONAL | ) | |
| INSTITUTION, | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| Respondent. | ) | |

Petitioner, Lorenzo Collins ("Collins"), challenges the constitutionality of his conviction in the case of *State v. Collins*, Cuyahoga County Court of Common Pleas Case No. CR-40077690.  Collins, *pro se*, filed his Petition for a Writ of Habeas Corpus (ECF No. 4) pursuant to 28 U.S.C. § 2254 on July 23, 2012.  On February 12, 2013, the Warden for the Ross Correctional Institution ("Respondent") filed his Answer/Return of Writ.  (ECF No. 10.)  Collins filed a Traverse on May 13, 2013.  (ECF No. 13.)  For reasons set forth in detail below, it is recommended that Collins's petition be DENIED.

### I.  Summary of Facts

In a habeas corpus proceeding instituted by a person in custody pursuant to the judgment of a state court, factual determinations made by state courts are presumed correct.  28 U.S.C. § 2254(e)(1); *see also House v. Bell,* 283 F.3d 37 (6th Cir. 2002).  The state appellate court

summarized the facts underlying Collins's conviction as follows:

[*P4]  A jury trial commenced on May 5, 2010.  The testimony revealed that on April 4, 2006, sometime before 4:40 a.m., a fire broke out in an apartment building located at 1554 East 105th Street in Cleveland, Ohio.  Four children, siblings under the age of 13, died of asphyxiation.  Several people escaped from the burning building, including the children's two-year old sibling and mother, Raquel Stewart Hayes ("Hayes").  The evidence also showed that a 1999 two-door gold Monte Carlo parked several blocks away was set on fire.

[*P5]  Detective Kerry Good of the Cleveland Fire Investigation Unit testified that the fire department was alerted to the fire around 4:40 a.m.  The fire began on the second floor in the front entrance of an apartment owned by JR Grant.  A flammable/combustible liquid had been poured in front of Grant's apartment, down the hallway, and partway down the stairs toward the entrance of the building.  The liquid was then ignited with an open flame, starting the fire that killed the four children who lived on the third floor above Grant's apartment.  Samples taken from the floor area tested positive for gasoline.

[*P6]  Jamal Woods, a.k.a. January ("Woods"), testified that he and Collins did not get along because Woods had a relationship with Collins's girlfriend, Aneesa Williams ("Williams"), while Collins was in prison.  When Collins was released from prison and discovered the relationship, he came to JR Grant's apartment and told Grant to tell Woods that he was looking for him.  Woods did not live with Grant but admitted he sold drugs "six days a week" from Grant's apartment.  From then on, Collins and Woods engaged in various verbal altercations.

[*P7]  Several days before the fire, Woods was in the apartment and observed Collins drive by the apartment building a few times in a blue Saab.  Woods told Grant he thought there was going to be trouble.  That was the last time he saw Collins prior to the fire.

[*P8]  On the day of the fire, Woods was in Grant's apartment until 2:00 a.m. He then received a ride home from his friend, Alfred Cole.  After dropping Woods home, Cole proceeded to Winston's Bar located at East 131st and Miles to pick up Williams, who was a bartender there. Cole left without Williams because Collins, who was at the bar, told him that he would be driving her home.

[*P9]  Williams testified that as a result of her relationship with Collins she had three children.  She stated that she and Collins were sent to jail for drugs.  When they were released from jail, they discovered all of their belongings had been stolen from their apartment.  She and Collins believed their neighbor had taken the property.  However, when they confronted the neighbor, he denied taking anything.  The neighbor drove the 2005 Monte Carlo that was set on fire the night

-2-

of the apartment building fire.

[*P10]  Collins was later returned to jail for a probation violation.  While Collins was in jail, Williams began a relationship with Woods.  Collins was released from prison in October 2005 and discovered the relationship. Collins threatened to take the children from Williams, but never acted on it. On the morning of the fire, Collins had come to the bar around 2:00 a.m. and told her he wanted her to come back home.  She refused.  After he left the bar, he repeatedly called Williams, but she refused to talk to him.  Later that morning, she heard about the fire at the apartment building.

[*P11]  Hearing he was a suspect in the fire, Collins voluntarily came to the police station where he gave a statement denying being involved.  He claimed that he had been home with his girlfriend, Michelle Brown, until she left at midnight, at which time he went to sleep.  A review of Collins's cell phone records showed that he had made several calls from different locations in Cleveland, during and after the time of the fire, which contradicted his statement that he was home the entire night.  The calls were made to the phone of the girlfriend of co-defendant Collin Bennett.  The calls commenced around 2:30 a.m. from the area of the bar where Williams worked.  Calls were also made between 3:30 a.m. and 4:30 a.m. in the vicinity of the apartment building.  Video surveillance cameras also captured the image of two black males at approximately 3:14 a.m., approach the front of the apartment building.  One of the men was carrying a jug that looked like an antifreeze jug.  The video was of poor quality so it was impossible to identify the men.

[*P12]  On June 13, 2006, co-defendant Bennett gave a voluntary statement to police in which he stated that he had been with Collins the night of the fire.  When the police showed him the video, Bennett began to cry and identified himself and Collins as the men in the video.  At trial, Bennett admitted that he and Collins drove to a gas station to purchase beer.  When Bennett exited the store, he observed Collins filling an antifreeze jug with gasoline and place it on the back seat floor.  Later that night they pulled into a parking lot located near the apartment building.  Collins exited the vehicle and retrieved the jug of gas and told Bennett to walk with him.  Bennett than observed Collins enter the building carrying the jug and run out of the building a short time later.  They then drove to East 114th Street and Ashbury, where Bennett saw Collins pour gasoline on the Monte Carlo and set it on fire. A few days after the fire, Collins approached Bennett and told him to keep his mouth shut.

[*P13]  The jury found Collins guilty on all counts; the trial court sentenced him to an aggregate sentence of 111.5 years in prison, plus a total fine of $18,000.

*State v. Collins*, 2011 Ohio App. LEXIS 2738, 2011-Ohio-3241 (Ohio Ct. App., Jun. 30, 2011).

## II. Procedural History

**A.   First Conviction**

In May of 2006, a Cuyahoga County Grand Jury charged Collins, along with co-defendant Collin Bennett, as follows: four counts of aggravated murder in violation of Ohio Revised Code ("O.R.C.") § 2903.01(A) together with felony murder, victim under age 13 murder, and mass murder specifications; four counts of aggravated murder in violation of O.R.C. § 2903.01(B) together with felony murder, victim under age 13 murder, and mass murder specifications; four counts of aggravated murder in violation of O.R.C. § 2903.01(C) together with felony murder, victim under age 13 murder, and mass murder specifications; four counts of aggravated arson in violation of O.R.C. § 2909.02(A)(1); one count of aggravated arson in violation of O.R.C. § 2909.02(A)(2); and, one count of arson in violation of O.R.C. § 2909.03(A)(1).[1] (ECF No. 10-1, Exh. 1.)

On March 16, 2007, a jury found Collins guilty of four counts of murder – the lesser included offense under counts five through eight – in violation of R.C. §2903.02(B) with felony murder, victim under the age of thirteen murder, and mass murder specifications.  (ECF No. 10-1, Exh. 3.)  In addition, Collins was found guilty of four counts of aggravated arson in violation of O.R.C. §2909.02(A)(1) as charged in counts thirteen through sixteen, one count of aggravated arson in violation of O.R.C. §2909.02(A)(2) as charged in count seventeen, and one count of arson in violation of R.C. §2909.03(A)(1) as charged in count eighteen.  *Id.*

On April 2, 2007, Collins was sentenced to an aggregate term of one hundred six and

---

[1]  According to Respondent, prior to trial, Collins's co-defendant entered a plea of guilty. (ECF No. 10 at 2.)

one-half years to life in prison.  (ECF No. 10-1, Exh. 4.)

**B.   Direct Appeal**

On May 2, 2007, Collins, through counsel, filed a Notice of Appeal with the Court of

Appeals for the Eighth Appellate District ("state appellate court") raising the following

assignments of error:

1.  The defendant was denied his right to a fair and impartial trial when the court commented to the jury that defendant was in jail, even though the defendant appeared at trial in civilian clothing.

2.  The trial court improperly instructed the jury regarding accomplice testimony pursuant to ORC 2923.03(D) thereby depriving the defendant his right to a fair trial.

3.  The trial court erred admitting the defendant's written statement as an exhibit and submitting it to the jury for their review during deliberations.

4.  The defendant's convictions were against the manifest weight of the evidence.

5.  The defendant was deprived [of] his right to a fair trial by the cumulative effect of all errors, even if any one of those errors may be ruled harmless.

6.  The consecutive, maximum sentences imposed by the trial court were contrary to law and failed to apprise the defendant of the conditions of post release control.

(ECF No. 10-1, Exhs. 5 & 6.)

On March 25, 2008, the state appellate court sustained the first assignment of error and

remanded for a new trial.[2]  (ECF No. 10-1, Exh. 8.)

**C.   Second Conviction**

Prior to being retried, Collins, represented by new counsel, filed a motion to suppress

---

[2]  The State's subsequent appeal to the Ohio Supreme Court was dismissed as not involving any substantial constitutional question.  (ECF No. 10-1, Exhs. 10-15.)

evidence obtained from a search of a certain automobile and his statement given to the Cleveland Police Department.  (ECF No. 10-1, Exhs. 16 & 18.)  After a hearing, the motions were denied. (ECF No. 10, Exh. 40, Vol. I & II.)

On June 14, 2010, a jury found Collins guilty of the same ten counts as previously convicted.  Collins was sentenced as follows: 15 years to life for each of the four murder convictions, to run consecutively for a total of 60 years; 10 years for each of the five aggravated arson convictions, to run consecutively for a total of 50 years; and 18 months for the one arson conviction to run consecutively to the other sentences for an aggregate prison sentence of 111.5 years to life in prison.  (ECF No. 10-1, Exh. 21.)

**D.    Second Direct Appeal**

On July 15, 2010, Collins, through new appellate counsel, filed a Notice of Appeal with the Court of Appeals for the Eighth Appellate District ("state appellate court") raising the following assignments of error:

1. The court erred by denying Lorenzo Collins' motion to suppress the fruit garnered from the search of the Saab, as the search was illegal.

2. The court erred in neglecting to charge the jury with the necessary instruction relative to the value of the testimony of the co-defendant, Collin Bennett.

3. The Jury decided this matter against the manifest weight of the evidence thereby creating a manifest miscarriage of justice.

4. The court erred by not instructing the jury on involuntary manslaughter.

5. The court erred by not instructing the jury on reckless homicide.

6. The trial court erred when it sentenced appellant to separate consecutive sentences when the alleged multiple counts all arose out of one act and one animus.

-6-

(ECF No. 10-1, Exhs. 22 & 23.)

On June 30, 2011, the state appellate court overruled Collins' first five assignments of error, but sustained the sixth in light of the State's concession that the felony murder and aggravated arson counts should merge, but noting that separate counts remain as to each victim. *Collins*, 2011-Ohio-3241 at ¶¶44-45.  The court remanded for resentencing.  *Id*. at ¶45.

Prior to re-sentencing, on August 1, 2011, Collins, *pro se*, filed a notice of appeal to the Ohio Supreme Court presenting the following propositions of law:

1.   The trial court erred by denying appellant's motion to suppress the fruit garnered from the search of the car, as the search was illegal.

2.   The trial court erred by not instructing the jury on involuntary manslaughter.

3.   The trial court erred by not instructing the jury on reckless homicide.

4.   Appellate counsel was ineffective on appeal [for failing to argue that trial counsel should have requested a jury instruction for involuntary manslaughter as to the murder counts].

(ECF No. 10-1, Exhs. 26 & 27.)

On November 2, 2011, the appeal was dismissed as not involving any substantial constitutional question. (ECF No. 10-1, Exh. 29.)

**E.   Resentencing**

On August 2, 2011, Collins was resentenced.  The State elected to have Collins re-sentenced on the four felony murder charges. Collins was resentenced to fifteen years to life on each murder count (counts one through four).  Counts five through eight merged.  Collins was sentenced to ten years for the aggravated arson in count nine, as well as eighteen months for arson in count ten, resulting in an aggregate sentence of seventy-one and one-half years to life. (ECF No. 10-1, Exh. 30.)

**F.     Delayed Appeal from Resentencing**

Collins failed to file a timely direct appeal from his re-sentencing.  However, on November

2, 2011, Collins, represented by counsel, filed a notice of appeal and motion for delayed appeal

with the state appellate court.  (ECF No. 10-1, Exh. 31.)  The court granted leave to file a

delayed appeal and, on February 8, 2012, Collins's counsel filed an *Anders* brief wherein she

requested to withdraw as counsel as she could not advance a non-frivolous argument.  (ECF No.

10-1, Exh. 32.)

On March 21, 2012, represented by different counsel, Collins filed a brief and presented the

following assignment of error: "the trial court erred by sentencing Lorenzo Collins on allied

offenses of similar import."[3]  (ECF No. 10-1, Exh. 33.)  The state appellate court construed the

appeal as raising two related arguments: (1) the court erred in failing to merge the four

felony murder convictions into one because they arose as a proximate result of the same

offense; and (2) the court erred in failing to merge his four aggravated arson convictions and

merging those convictions with the four convictions of felony murder.  (ECF No. 10-1, Exh. 35

at 5.)  The state appellate court found that both claims are barred by *res judicata*, because they

were not raised on direct appeal.  *Id.*

On September 14, 2012, Collins filed a notice of appeal with the Ohio Supreme Court

presenting the following propositions of law:

1.    "A defendant is not barred by *res judicata* from raising" an allied offense

---

[3]  Counsel also argued that "the consecutive sentences imposed for these offenses
violated the double jeopardy provisions of the Fifth Amendment of the United States
Constitution and Article I. Section 10 of the Ohio Constitution because they constituted
multiple punishment for what was essentially a single offense."  (ECF No. 10-1, Exh. 33
at 4.)

-8-

argument "in a resentencing, even if similar issues arose and were not objected to at the original sentencing."  (*State v. Wilson*, (2011), 129 Ohio St.3d 214 applied and followed).

2.  The law of the case doctrine does not apply to dicta by a reviewing court that was not the product of litigation by the parties and does not preclude an argument that the sentence imposed is unauthorized by law.

3.  The imposition of consecutive terms of imprisonment for offenses that are allied under R.C. 2941.25 constitutes an illegal sentence that is void *ab initio* and thus can be corrected at any time.

(ECF No. 10-1, Exh. 37.)

On November 28, 2012, the appeal was dismissed as not involving any substantial constitutional question.  (ECF No. 10-1, Exh. 29.)

## G.  Federal Habeas Petition

On July 23, 2012, Collins filed a Petition for Writ of Habeas Corpus and asserted the following grounds for relief:

GROUND ONE: The court erred by denying Lorenzo Collins' motion to suppress the fruit garnered from the search of the Saab, as the search was illegal.

GROUND TWO: The court erred in neglecting to charge the jury with the necessary instruction relative to the value of the testimony of the co-defendant, Collins Bennett.

GROUND THREE: The court erred by not instructing the jury on involuntary manslaughter.

GROUND FOUR: The court erred by not instructing the jury on reckless homicide.

GROUND FIVE: Failure to merge sentences for allied offenses of similar import.[4]

---

[4]  Though Collins sought to amend his pleadings, it is not altogether clear what new ground for relief he wishes to raise.  Because Collins refers to his state court filings that challenge the court's failure to merge his sentences for his four murder convictions,

(ECF Nos. 4 & 9.)

### III.  Exhaustion and Procedural Default

**A.    Exhaustion Standard**

Petitioners must exhaust their state remedies prior to raising claims in federal habeas corpus proceedings.  *See* 28 U.S.C. § 2254(b),( c).  This requirement is satisfied "when the highest court in the state in which the petitioner was convicted has been given a full and fair opportunity to rule on the petitioner's claims."  *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990).  However, if relief is no longer available in state court, exhaustion can be rendered moot:  "If no remedy exists, and the substance of a claim has not been presented to the state courts, no exhaustion problem exists; rather, it is a problem of determining whether cause and prejudice exist to excuse the failure to present the claim in the state courts."  *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994); *see Buell v. Mitchell*, 274 F.3d 347, 349 (6th Cir. 2001).

**B.    Procedural Default Standard**

Federal courts will not consider the merits of procedurally defaulted claims, unless the petitioner demonstrates cause for the default and prejudice resulting therefrom, or where failure to review the claim would result in a fundamental miscarriage of justice.  *See Lundgren v. Mitchell*, 440 F.3d 754, 763 (6th Cir.2006) (*citing Wainwright v. Sykes*, 433 U.S. 72, 87 (1977)).  A claim may become procedurally defaulted in two ways. *Id*.  First, a petitioner may procedurally default a claim by failing to comply with state procedural rules in presenting his claim to the appropriate state court.  *Id.*; *see also Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir.

---

the court construes ground five as raising the same argument.  (ECF No. 8.)

1986).  If, due to petitioner's failure to comply with the procedural rule, the state court declines to reach the merits of the issue, and the state procedural rule is an independent and adequate grounds for precluding relief, the claim is procedurally defaulted.[5] *Id.*

Second, a petitioner may also procedurally default a claim by failing to raise and pursue that claim through the state's "ordinary appellate review procedures."  *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999).  If, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim, it is procedurally defaulted. *Engle v. Isaac*, 456 U.S. 107, 125 n. 28 (1982); *see also Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991).  This second type of procedural default is often confused with exhaustion. Exhaustion and procedural default, however, are distinct concepts.  AEDPA's exhaustion requirement only "refers to remedies still available at the time of the federal petition." *Engle*, 456 U.S. at 125 n. 28.  Where state court remedies are no longer available to a petitioner because he failed to use them within the required time period, procedural default and not exhaustion bars federal court review.  *Id.*  In Ohio, a petitioner is not entitled to raise claims in post-conviction proceedings where those claims could have been raised on direct appeal.  *Id.* Thus, if an Ohio petitioner failed to raise a claim on direct appeal, which could have been raised, the claim is procedurally defaulted.  *Id.*

A claim is adequately raised on direct appeal if it was "fairly presented" to the state court. To fairly present a claim to a state court a petitioner must assert both the legal and factual basis

---

[5]  In *Maupin*, the Sixth Circuit established a four-step analysis to determine whether a claim is procedurally defaulted.  785 F.2d at 135.  Under this test, the Court decides (1) whether the petitioner failed to comply with an applicable state procedural rule, (2) whether the state courts actually enforced the state procedural sanction, (3) whether the state procedural bar is an "independent and adequate" state ground on which the state can foreclose federal review, and (4) whether the petitioner has demonstrated "cause" and "prejudice."  *Id*. at 138-39; *Barkley v. Konteh*, 240 F.Supp.2d 708 (N.D. Ohio 2002).

for his claim.  *See McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000).  Accordingly, a "petitioner must present his claim to the state courts as a federal constitutional issue--not merely as an issue arising under state law."  *Koontz v. Glossa*, 731 F.2d 365, 368 (6th Cir. 1984).  A petitioner can take four actions in his brief which are significant to the determination as to whether a claim has been fairly presented as a federal constitutional claim: "(1) reliance upon federal cases employing constitutional analysis; (2) reliance upon state cases employing federal constitutional analysis; (3) phrasing the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or (4) alleging facts well within the mainstream of constitutional law."  *Newton v. Million*, 349 F.3d 873, 877 (6th Cir. 2003).

A petitioner's procedural default, however, may be excused upon a showing of "cause" for the procedural default and "actual prejudice" from the alleged error.  *See Maupin*, 785 F.2d at 138-39.  "Demonstrating cause requires showing that an 'objective factor external to the defense impeded counsel's efforts to comply' with the state procedural rule."  *Franklin v. Anderson*, 434 F.3d 412, 417 (6th Cir. 2006) (*quoting Murray v. Carrier*, 477 U.S. 478, 488 (1986)).  Meanwhile, "[d]emonstrating prejudice requires showing that the trial was infected with constitutional error."  *Id.*  Where there is strong evidence of a petitioner's guilt and the evidence supporting petitioner's claim is weak, the actual prejudice requirement is not satisfied.  *See United States v. Frady*, 456 U.S. 152, 172 (1982); *Perkins v. LeCureux*, 58 F.3d 214, 219-20 (6th Cir. 1995); *Rust v. Zent*, 17 F.3d 155, 161-62 (6th Cir. 1994).  Prejudice does not occur unless petitioner demonstrates "a reasonable probability" that the outcome of the trial would have been different.  *See Mason v. Mitchell*, 320 F.3d 604, 629 (6th Cir. 2003) (*citing Strickler v. Greene*,

-12-

527 U.S. 263, 289 (1999)).

Finally, a petitioner's procedural default may also be excused where a petitioner is actually innocent in order to prevent a "manifest injustice." *See Coleman v. Thompson*, 501 U.S. 722, 749-50 (1991). Conclusory statements are not enough – a petitioner must "support his allegations of constitutional error with new reliable evidence-whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence-that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995)*; See Jones v. Bradshaw*, 489 F.Supp.2d 786, 807 (N.D.Ohio 2007).

## C. Analysis

Respondent contends that grounds two, three, and five are procedurally defaulted. (ECF Nos. 10 & 12.)

### 1. Ground Three: Contemporaneous Objection Rule

Respondent argues that ground three is procedurally defaulted because Collins failed to request a jury instruction for involuntary manslaughter at the appropriate time. (ECF No. 10 at 16-21.) The state appellate court, in addressing this issue, held as follows:

> [*P33] In this fourth assigned error, Collins argues that the trial court erred by failing to instruct the jury on the lesser-included offense of involuntary manslaughter.

> [*P34] We note that counsel failed to object to the trial court's failure to instruct on involuntary manslaughter; therefore, he has waived all errors except plain error regarding the instructions. Crim.R. 52(B). Plain error as to jury instructions is proven when the outcome of the trial would have been different but for the alleged error. *State v. Campbell*, 69 Ohio St.3d 38, 1994 Ohio 492, 630 N.E.2d 339. We conclude plain error did not occur.

> [*P35] A charge on a lesser included offense is only required where the evidence presented at trial would reasonably support both an acquittal on the crime charged and a conviction upon the lesser included offense. *State v. Thomas* (1988), 40

-13-

Ohio St.3d 213, 533 N.E.2d 286, paragraph two of the syllabus. Collins is correct that involuntary manslaughter is a lesser-included offense to felony murder. *State v. Lynch*, 98 Ohio St.3d 514, 2003 Ohio 2284, 787 N.E.2d 1185, ¶79.  However, the evidence does not support a charge on involuntary manslaughter because the evidence did not support an acquittal as to the felony murder charges.

[*P36]  Collins contends an instruction on involuntary manslaughter should have been given because he did not intend to kill the four victims.  However, specific intent is not necessary for felony murder.  Instead, the issue is whether the defendant had the requisite mental state for the underlying offense. *State v. Goldsmith*, Cuyahoga App. No. 90617, 2008 Ohio 5990.

[*P37]  Pursuant to R.C. 2903.02(B), felony murder proscribes causing the death of another as a proximate result of committing an offense of violence that is a felony of the first or second degree.  The predicate offense of violence to Collins's felony-murder charge was aggravated arson under R.C. 2909.02(A)(1), which is a first degree felony.  R.C. 2909.02(A)(1) prohibits "knowingly * * * creating a substantial risk of serious physical harm to any person other than the offender."  Pursuant to R.C. 2901.22(B), a person acts knowingly, "when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature."

[*P38]  Collins's act of pouring gasoline inside the inhabited apartment building and then igniting it with an open flame certainly created the substantial risk of physical harm required to support the felony murder conviction.  To argue that Collins was not aware that his conduct would cause serious physical harm defies reason.  Thus, because Collins's actions satisfied the requisite intent for felony murder, there would be no basis for acquitting Collins of the greater offense of felony murder in favor of convicting him for the lesser-included offense of involuntary manslaughter.  Accordingly, Collins was not prejudice[d] by the trial court's failure to instruct on involuntary manslaughter.  Collins's fourth assigned error is overruled.

*Collins*, 2011-Ohio-3241 at ¶¶33-38.

In Ohio, a petitioner waives an alleged error when he fails to make a contemporaneous objection.  *See Osborne v. Ohio*, 495 U.S. 103, 124 (1990) (recognizing Ohio's long-standing contemporaneous objection rule).  The Sixth Circuit has held that Ohio's "contemporaneous-objection rule is an adequate and independent state ground barring federal habeas review, *Biros v. Bagley*, 422 F.3d 379, 387 (6th Cir. 2005), and that plain-error review is not inconsistent with

-14-

the procedural default." *Awkal v. Mitchell*, 613 F.3d 629, 648-649 (6th Cir. 2010) (citing

*Lundgren v. Mitchell*, 440 F.3d 754, 765 (6th Cir. 2006)); *Hinkle v. Randle*, 271 F.3d 239, 244

(6th Cir. 2001).  "The state court's plain error review did not constitute a waiver of the procedural

default."  *Mason v. Brunsman*, 483 Fed. Appx. 122, 130-31 (6th Cir. 2012); *see also Shafer v.

Wilson*, 364 Fed. Appx. 940, 945 (6th Cir. 2010) (finding that the State of Ohio expressly

enforced its contemporaneous objection rule where "the last state court to render a reasoned

opinion in this case, the Ohio Court of Appeals on direct appeal, noted the failure to object,

applied plain-error review, and denied [appellant's] claims for relief").

In the instant matter, Collins never objected to the trial court's failure to give a jury

instruction on involuntary manslaughter.  He does not challenge this factual finding.

Accordingly, the first three elements of *Maupin* test are satisfied as Collins failed to comply with

the contemporaneous objection rule, the state appellate court actually enforced the rule, and said

rule constitutes an "independent and adequate" state ground on which the state can foreclose

federal review.  As such, ground three is procedurally defaulted.

### 2.  Grounds Two and Five: Res Judicata

Grounds two and five, claims that could have been asserted on direct appeal but were not,

are procedurally defaulted under the Ohio doctrine of *res judicata*.  *See Coleman v. Mitchell*, 244

F.3d 533, 538 (6th  Cir.2001) (*citing State v. Perry*, 10 Ohio St.2d 175, 226 N.E.2d 104, 108

(Ohio 1967)).  The state appellate court unequivocally found that Collins's claim, as now

contained in ground five of his habeas petition, was "barred by the doctrine of *res judicata*,"

specifically noting that "[a]lthough Collins did not argue in his prior appeal that the four felony

murder convictions should merge into one, this Court specifically stated that the four felony

-15-

murder counts do not merge because there were four separate victims." *State v. Collins*, 2012 Ohio App. LEXIS 3256, 2012-Ohio-3687 at ¶¶7-9 (Ohio Ct. App. Aug. 16, 2012).  Under the first prong of the *Maupin* test, the Court must decide whether Collins failed to comply with an applicable state procedural rule.  Here, the Court defers to the state appellate court's determination as to whether Collins raised such an argument on direct appeal.  Nonetheless, even if this Court were to find that Collins adequately raised the issue in ground five at the appellate level, it is indisputable that Collins did not raise such an argument in his memorandum in support of jurisdiction before the Ohio Supreme Court .  (ECF No. 10-1, Exh. 27.)

Ground two of Collins's petition – the argument that trial the court erred by neglecting to give a proper jury instruction with respect to the testimony of the co-defendant – was also not raised on direct appeal before the Ohio Supreme Court.  *Id.*  Collins, therefore, has defaulted both grounds two and five by failing to raise and pursue his claims through the state's "ordinary appellate review procedures."  *O'Sullivan*, 526 U.S. at 848.  He failed to present the same claims under the same theory at every stage of his direct appeal.  The Ohio Supreme Court was never requested to review the argument that the sentences should have merged or that specific instructions should have been given concerning a co-defendant's testimony.  Since these claims were not presented in a full round of state appeals, Collins is prohibited from raising them now and grounds two and five are procedurally defaulted.  *See Engle*, 456 U.S. at 125 n. 28; *see also Coleman*, 501 U.S. at 731-32.

Under the second prong, the state courts actually enforced the state procedural sanction, finding that the claims before it were barred by the doctrine of *res judicata*.  Notably, the state appellate court did not even address the merits of Collins's argument due to his default.  Under

the third prong of *Maupin*, the Sixth Circuit has stated that *res judicata* "is an actually enforced, adequate and independent state ground upon which the Ohio state courts consistently refuse to review the merits of a defendant's claims." *Powers v. Bobby*, 2008 U.S. Dist. LEXIS 90612 (N.D. Ohio Nov. 3, 2008) (citations omitted); *see Coleman v. Mitchell,* 268 F.3d 417, 427 (6th Cir. 2001); *Williams v. Bagley*, 380 F.3d 932, 966-67 (6th Cir. 2004); *Jacobs v. Mohr*, 265 F.3 407, 417 (6th Cir. 2001).

Lastly, under the fourth prong of *Maupin*, "[d]emonstrating cause requires showing that an 'objective factor external to the defense impeded counsel's efforts to comply' with the state procedural rule." *Franklin v. Anderson*, 434 F.3d 412, 417 (6th Cir. 2006) *quoting Murray v. Carrier*, 477 U.S. 478, 488 (1986).  Collins has not made such a showing.  Indeed, he has not made any argument with respect to grounds two and three.  With respect to ground five, he has only argued that there was no firmly established state procedural rule.  (ECF No. 13-1.)  Since Collins has failed to establish cause for his procedural default, there is no need to consider the issue of prejudice.  *See Smith*, 477 U.S. at 533; *Long*, 722 F.2d at 289.

Finally, Collins does not claim actual innocence in his Petition.  An actual innocence claim will only excuse a procedural default where it is supported by "new reliable evidence-whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence-that was not presented at trial."  *Schlup*, 513 U.S. at 324; *Jones*, 489 F.Supp.2d at 807. Collins has provided no new evidence, therefore, his procedural default cannot be excused.

As such, it is recommended that grounds two, three, and five be dismissed as procedurally defaulted.

 Furthermore, even if ground five was not deemed procedurally defaulted, it is of dubious

merit.  Collins was convicted of four counts of murder for the death of four children in violation of O.R.C. § 2903.02(B), which prohibits causing "the death of another as a proximate result of" committing an offense "of violence that is a felony of the first or second degree."  (ECF No. 10-1, Exh. 21.)  Collins's arguments – that his four convictions for murder should be merged and/or violate the Double Jeopardy clause – are meritless.  In a factually similar case, a federal court in Indiana rejected a petitioner's argument that conviction for five deaths resulting from one motor vehicle accident resulted in double jeopardy.  *See Marshall v. Farley*, 823 F. Supp. 615, 617 (N.D. Ind. 1993) *aff'd*, 42 F.3d 1391 (7th Cir. 1994) ("In defining the offense [of reckless homicide], the legislature has articulated its intent that the essence of the crime is the death of another person .... Accordingly, where several deaths occur in the course of a single incident, the statute has been violated several times over. Therefore, the trial court did not err in refusing to vacate [the petitioner's] convictions of reckless homicide for each of the five decedents."); *accord Johnson v. Singletary*, 883 F. Supp. 1535 (M.D. Fla. 1995) (six convictions for attempted murder and imposition of six consecutive sentences did not violate double jeopardy where defendant opened fire on six police officers); *Petzold v. Jones*, 619 F. Supp. 2d 1143, 1150 (W.D. Okla. 2008) ("The United States Supreme Court has never extended the Double Jeopardy Clause to multiple punishments for multiple crimes simply because the events had involved a single transaction.") *aff'd*, 349 F. App'x 295 (10th Cir. 2009); *Faulkner v. Schriro*, 2007 WL 2949053 (D. Ariz. Oct. 9, 2007) ("Th[e] distinction in the victims in each count is sufficient to avoid any double jeopardy concerns.")

### IV.  Review on the Merits

This case is governed by the Antiterrorism and Effective Death Penalty Act of 1996

-18-

("AEDPA"), 28 U.S.C. § 2254.  *See Lindh v. Murphy*, 521 U.S. 320, 326-27, 337 (1997).  The

relevant provisions of AEDPA state:

> An application for a writ of habeas corpus on behalf of a person in custody
> pursuant to the judgment of a State court shall not be granted with respect to any
> claim that was adjudicated on the merits in State court proceedings unless the
> adjudication of the claim–
>
>> (1) resulted in a decision that was contrary to, or involved an unreasonable
>> application of, clearly established Federal law, as determined by the
>> Supreme Court of the United States; or
>>
>> (2) resulted in a decision that was based on an unreasonable determination of
>> the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (1996).

Clearly established federal law is to be determined by the holdings of the United States

Supreme Court.  *See Parker v. Matthews,* 132 S. Ct. 2148, 2012 WL 2076341, *6 (U.S. Jun. 11,

2012); *Renico v Lett,* 559 U.S. –, 130 S.Ct. 1855, 1865-1866 (2010); *Williams v. Taylor*, 529

U.S. 362, 412 (2000); *Ruimveld v. Birkett*, 404 F.3d 1006, 1010 (6th Cir. 2005).  However, an

explicit statement by the Supreme Court is not mandatory; rather, "the legal principles and

standards flowing from [Supreme Court] precedent" also qualify as "clearly established law."

*Ruimveld*, 404 F.3d at 1010 (*quoting Taylor v. Withrow*, 288 F.3d 846, 852 (6th Cir. 2002)).  The

Supreme Court has indicated, however, that circuit precedent does not constitute "clearly

established Federal law, as determined by the Supreme Court."  *Parker*, 2012 WL 2076341, *6;

*Howes v. Walker,* 132 S.Ct. 2741, 2012 WL 508160 (2012).

A state court's decision is contrary to clearly established federal law "if the state court

arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if

the state court decides a case differently than [the Supreme] Court has on a set of materially

-19-

indistinguishable facts." *Williams v. Taylor*, 529 U.S. at 413.  By contrast, a state court's decision involves an unreasonable application of clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.*  However, a federal district court may not find a state court's decision unreasonable "simply because that court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411.  Rather, a federal district court must determine whether the state court's decision constituted an objectively unreasonable application of federal law.  *Id.* at 410-12.  "This standard generally requires that federal courts defer to state-court decisions." *Strickland v. Pitcher*, 162 Fed. Appx. 511, 516 (6th Cir. 2006) (*citing Herbert v. Billy*, 160 F.3d 1131, 1135 (6th Cir. 1998)).

In *Harrington v. Richter*, ⸺ U.S. ⸺, 131 S.Ct. 770, 178 L.Ed.2d 624 (2011), the Supreme Court held that as long as "fairminded jurists could disagree on the correctness of the state court's decision," relief is precluded under the AEDPA.  *Id.* at 786 (internal quotation marks omitted).  The Court admonished that a reviewing court may not "treat[ ] the reasonableness question as a test of its confidence in the result it would reach under *de novo* review," and that "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 785.  The Court noted that Section 2254(d) "reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems" and does not function as a "substitute for ordinary error correction through appeal." *Id.* (internal quotation marks omitted).  Therefore, a petitioner "must show that the state court's ruling ... was so lacking in justification that there was an error well understood and comprehended in existing law beyond

-20-

any possibility for fairminded disagreement." *Id.* at 786–87. This is a very high standard, which the Supreme Court readily acknowledged. *See id.* at 786 ("If this standard is difficult to meet, that is because it is meant to be.")

**A. Ground One: Illegal Search**

Collins argues that the trial court erred by denying his motion to suppress the evidence garnered from the allegedly illegal search of an automobile. (ECF No. 4.)

Habeas relief is generally not available on the ground that a petitioner's Fourth Amendment rights were violated if the petitioner had an opportunity to present the Fourth Amendment claim in state courts. *See Stone v. Powell*, 428 U.S. 465 (1976); *Wallace v. Kato*, 549 U.S. 384, 395 n. 5 (2007); *accord Ewing v. Ludwick*, 134 Fed. Appx. 907, 911 (6th Cir.2005). The United States Supreme Court has held that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." *Stone*, 428 U.S. at 494. The Sixth Circuit has found that the determination as to whether a petitioner has had "an opportunity for full and fair litigation of a Fourth Amendment claim" requires a federal district court to make two separate inquiries. *Riley v. Gray*, 674 F.2d 522, 526 (6th Cir.1982) (citations omitted). First, the court should ascertain "whether the state procedural mechanism, in the abstract, presents the opportunity to raise a fourth amendment claim." *Id.* Second, the court must ascertain "whether presentation of the claim was in fact frustrated because of a failure of that mechanism." *Id.* Because the Sixth Circuit already has determined that "[t]he mechanism provided by the State of Ohio for the resolution of fourth amendment claims is ... clearly adequate," this Court's role is confined to the

second inquiry—namely whether presentation of the claim was in fact frustrated because of a failure of that mechanism. *Id.*; *accord Bridges v. Bradshaw*, 2006 U.S. Dist. LEXIS 96749 (N

.D. Ohio 2006).

The state appellate court concluded that the search was not unconstitutional and the motion to suppress was denied:

> [*P14]  In his first assigned error, Collins argues the trial court erred by denying his motion to suppress the evidence of gasoline found on the back seat mats of the blue Saab.
>
> [*P15]  Appellate review of a suppression ruling involves mixed questions of law and fact.  *State v. Burnside*, 100 Ohio St.3d 152, 2003 Ohio 5372, 797 N.E.2d 71. When ruling on a motion to suppress, the trial court serves as the trier of fact and is the primary judge of the credibility of the witnesses and the weight of the evidence.  *State v. Fanning* (1982), 1 Ohio St.3d 19, 20, 1 Ohio B. 57, 437 N.E.2d 583.  An appellate court must accept the trial court's findings of fact as true if they are supported by competent and credible evidence.  *Burnside*.  The appellate court must then determine, without any deference to the trial court, whether the facts satisfy the applicable legal standard. *Id.*
>
> [*P16]  Collins was seen in a blue Saab on the night of the fire.  When Collins's sister, Latoya, came to the police station in the blue Saab, the police ran the license plate.  The information obtained indicated that Veronica May was the owner of the vehicle, not Collins.  After Collins was arrested, the police impounded the vehicle and, after obtaining a warrant, tested it for traces of gasoline.  The car's back seat mats tested positive for gasoline.
>
> [*P17]  Generally, non-owners of a vehicle do not have standing to object to the search and seizure of the vehicle.  *Rakas v. Illinois* (1978), 439 U.S. 128, 134, 99 S.Ct. 421, 58 L.Ed.2d 387.  The Ohio Supreme Court, however, has recognized that a driver of an automobile who demonstrates that he has the owner's permission to use the vehicle has a reasonable expectation of privacy in the vehicle and standing to challenge its stop and search.  *State v. Carter* (1994), 69 Ohio St.3d 57, 62, 1994 Ohio 343, 630 N.E.2d 355.  At the suppression hearing, Collins testified that he had the owner's permission to use the vehicle.  However, he did not have exclusive use of the car as several people in the neighborhood used the car.  Regardless, the search was not unlawful because the officers did not search the vehicle until after they had obtained a search warrant.
>
> [*P18]  Thus, the only basis for challenging the search of the vehicle was the

seizure of the vehicle prior to the search.  While Collins contended at the suppression hearing that the car was parked in his driveway when it was towed, in his suppression motion he stated the car was parked on the public street. Regardless of where the car was located when it was towed, the officers had probable cause to seize the vehicle.  Probable cause exists when there is a "fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates* (1983), 462 U.S. 213, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527.  If there is probable cause to search a motor vehicle, it is reasonable under the Fourth Amendment for police to either seize the vehicle and hold it before presenting the probable cause issue to a magistrate or to carry out an immediate warrantless search.  *Chambers v. Maroney* (1970), 399 U.S. 42, 52, 90 S.Ct. 1975, 26 L.Ed.2d 419.  Prior to seizing the car, the officers had arrested Collins for setting the fire.  They had also been told by several people that Collins was driving the blue Saab around the time of the fire.  This knowledge was sufficient to warrant a belief that the vehicle contained evidence of Collins's involvement in the crime.

[*P19]  Moreover, obtaining a warrant prior to seizing the vehicle would create delay.  Given the fact the car could easily be moved and any evidence contained within destroyed, it was prudent for the officers to seize the vehicle.  *Chambers v. Maroney* (1970), 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419.  The officers minimized the intrusion by waiting to search the car until after a search warrant was obtained.  Accordingly, Collins's first assigned error is overruled.

*Collins*, 2011-Ohio-3241 at ¶¶14-19.

As indicated by the state appellate court, in response to Collins's motion to suppress, the trial court held a suppression hearing where Collins himself testified.  As such, the Court cannot find that presentation of Collins's claim was frustrated by a failure of the State of Ohio's mechanism for hearing Fourth Amendment claims.  Collins's mere disagreement with the outcome of the suppression hearing does not raise a cognizable claim.

**B.  Ground Four: Jury Instructions**

In ground four of the petition, Collins asserts that the trial court erred by not instructing the jury on reckless homicide despite defense counsel's request for such an instruction.  (ECF No. 4.)  Collins raised this argument on direct appeal, and the state appellate court found as follows:

-23-

[*P39]  In his fifth assigned error, Collins argues the trial court should have instructed the jury on the lesser-included offense of reckless homicide.  Defense counsel requested at trial that the court instruct on reckless homicide because the four children were not the intended victims and the fire was lit with "heedless indifference to the consequences."  Collins also argues the fact that some people in the building escaped the fire supported the reckless homicide charge.

[*P40]  We agree that reckless homicide is a lesser included offense of felony murder.  *State v. Watson*, Cuyahoga App. No. 87281, 2006 Ohio 5738; State v. Hunter, Cuyahoga App. No. 86048, 2006 Ohio 20; *State v. Jones*, Cuyahoga App. No. 80737, 2002 Ohio 6045.  However, the trial court did not err by refusing to give the instruction.

[*P41]  The difference between felony murder and reckless homicide is in the requisite mens rea.  As noted earlier, one acts knowingly, regardless of purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature.  A person acts recklessly, however, when, with heedless indifference to the consequences, he perversely disregards a known risk that his conduct is likely to cause a certain result or is likely to be of a certain nature. R.C. 2901.22(C).

[*P42]  The evidence showed that Collins set the apartment building on fire out of revenge because Woods stole his girlfriend while Collins was in prison.  The act of pouring the gasoline on the second floor and down the front stairs to prevent escape showed Collins was intent on killing Woods.  Although he may not have intended to kill the children, his act of preventing an escape down the stairs showed he was aware his conduct would be lethal.  The fact that people were able to escape by jumping out windows does not impact Collins's mental state because the fact he did not kill everyone in the building does not show he lacked an intent to cause substantial physical harm.  Thus, because the evidence did not support an acquittal as to the felony murder charges, the trial court did not err by refusing to instruct on reckless homicide.  Accordingly, Collin[s]'s fifth assigned error is overruled.

*Collins*, 2011-Ohio-3241 at ¶¶39-42.

A challenge to jury instructions does not generally state a federal constitutional claim.  *See Engle v. Isaac*, 456 U.S. 107, 119 (1982); *Wood v. Marshall*, 790 F.2d 548, 551-52 (6th Cir. 1986); *Thomas v. Arn*, 704 F.2d 865, 868-69 (6th Cir. 1983).  In order to warrant habeas relief, a

-24-

petitioner must demonstrate that the jury instructions were *both* erroneous and, taken as a whole, so infirm that the entire trial was rendered fundamentally unfair. *See Estelle*, 502 U.S. 62, 72 (1991), *citing Cupp v. Naughten*, 414 U.S. 141, 146-47 (1973) (Petitioner must demonstrate that the trial court's failure to give his requested jury instructions rendered his trial fundamentally unfair, in violation of the Due Process Clause.) When challenging a court's failure to give a requested instruction, the petitioner's burden is "especially heavy," because "[a]n omission, or an incomplete instruction is less likely to be prejudicial than a misstatement of the law." *Henderson v. Kibbe*, 431 U.S. 145, 155 (1977).

> The Sixth Circuit held that the failure to give an instruction on a lesser-included offense, even when requested by counsel, is not of the "character or magnitude which should be cognizable on collateral attack." *Bagby v. Sowders*, 894 F.2d 792, 797 (6th Cir.1990) (*en banc*). The *Bagby* Court stated that it was "conceivable" that failure to instruct regarding a lesser-included offense in a non-capital case might be cognizable on federal habeas review where "a fundamental miscarriage of justice is found to have resulted from the arbitrary and unsupportable denial of a lesser included offense instruction in clear defiance of state law." *Id.* at 795. However, the Sixth Circuit emphasized these occasions would occur only in the "most unusual circumstances," such as where the failure to give the instruction likely resulted in the conviction of an innocent person. *See id.*

*Bishop v. Hudson*, 1:08 CV 2764, 2010 WL 703083 (N.D. Ohio Feb. 22, 2010).

Here, the state appellate court upheld the trial court's decision to not give an instruction for reckless homicide. The ruling of the state appellate court is premised entirely upon the application of state law, as well as on its factual determinations, which are entitled to a presumption of correctness which can only be rebutted by clear and convincing evidence. *Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998); *McQueen v. Scroggy*, 99 F.3d 1302, 1310 (6th Cir. 1996). Where a state court has reviewed a request for a lesser-included offense instruction and concludes that it was not warranted by the evidence presented at trial, as the state

appellate court did herein, "that conclusion is axiomatically correct, as a matter of law." *Bagby,* 894 F.2d at 795.  Collins has not pointed to any clearly established rulings of the United States Supreme Court on a similar question of law that is contrary to the state court's decision, nor is there any indication that the state court decided an evidentiary issue differently than the Supreme Court in a case with materially indistinguishable facts.  Consequently, there is nothing in the state appellate court's decision that would lead this Court to find that there has been an infringement of a right guaranteed by the United States Constitution.

Ground four is without merit.

## V.  Conclusion

For the foregoing reasons, it is recommended that Collins's Petition be DENIED.

/s/ Greg White
U.S. MAGISTRATE JUDGE

Date: September 23, 2013

## OBJECTIONS

**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).**

-26-